**FILED**

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

DEC 1 3 2006

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| YANKTON SIOUX TRIBE, and its individual members, | \* | CIV 98-4042 |
| Plaintiffs, | \* | |
| UNITED STATES OF AMERICA, on its own behalf and for the benefit of the Yankton Sioux Tribe, | \* | MEMORANDUM OPINION AND ORDER |
| Plaintiff-Intervenor, | \* | |
| -vs- | \* | |
| MATT GAFFEY, States Attorney of Charles Mix County, et al., | \* | |
| Defendants. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This case is on remand from the Eighth Circuit Court of Appeals. The Court ordered that the parties file briefs informing the Court of their views on the issues remaining to be resolved in this case and their proposed methods of resolving the remaining issues. The Court has reviewed the parties' submissions and heard oral argument from the parties. The issues that will be considered on remand are explained below.

The Court finds that it must be decided on remand what remains of the Yankton Sioux Reservation following the diminishment of the reservation pursuant to the Supreme Court's decision in *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 358 (1998) ("*Yankton Sioux Tribe*") and the Eighth Circuit's decision in *Yankton Sioux Tribe v. Gaffey*, 188 F.3d 1010, 1030 (8th Cir. 1999). The Supreme Court held that the Yankton Sioux Reservation was diminished by the land ceded to the United States by the Yankton Sioux Tribe at the end of the nineteenth century. *See Yankton*

*Sioux Tribe*, 522 U.S. at 358. The issue of whether the Yankton Sioux Reservation was disestablished, however, was not addressed by the Supreme Court, and the case was remanded for further proceedings. *Id.* On remand, this Court held that the Yankton Sioux Reservation was not disestablished, that all nonceded lands continued to be part of the reservation, and that all nonceded lands were subject to federal criminal jurisdiction. *See Yankton Sioux Tribe v. Gaffey*, 14 F.Supp.2d 1135 (D.S.D. 1998) ("*Gaffey*"). On appeal, the Eighth Circuit affirmed this Court's decision that the Yankton Sioux Reservation was not disestablished, but found that the reservation was "further diminished by the loss of those lands originally allotted to tribal members which have passed out of Indian hands." *Gaffey II*, 188 F.3d at 1030. Those lands are no longer "part of the Yankton Sioux Reservation and are no longer Indian country within the meaning of 18 U.S.C. § 1151." *Id.*

Regarding the boundary issue, the Eighth Circuit held that "the original exterior treaty boundaries of the reservation have not been maintained." *Id.* Addressing land now owned in fee by individual Indians, the Eighth Circuit assumed that such land "is not under tribal jurisdiction unless it is found to be 'within the limits of [the] Indian reservation.'" *Id.* (quoting 18 U.S.C. § 1151(a)). Based upon the record before the Eighth Circuit, however, it was unable to define the precise boundaries of what remains of the Yankton Sioux Reservation. *Id.* Accordingly, on remand the Court must determine what the boundaries are of the Yankton Sioux Reservation.

The Yankton Sioux Tribe ("the Tribe") contends that the status of all fee lands, in addition to the trust lands addressed in *Gaffey II*, must be decided on remand. The Defendants, however, contend that the State was granted relief on all non-trust land and that all non-trust land is outside the reservation boundaries pursuant to the superior courts' decisions. Defendants contend that considering the status of fee lands would be contrary to the Eighth Circuit's mandate, which they contend only remanded the question of the three categories of trust land identified by the Eighth Circuit. *See Gaffey II*, 188 F.3d at 1030.

The Court recognizes that, "[w]hen a case has been decided by [the Eighth Circuit] on appeal and remanded to the district court, every question which was before [the Eighth Circuit] and

2

disposed of by its decree is finally settled and determined." *Klein v. Arkoma Prod. Co.*, 73 F.3d 779, 785 (8th Cir. 1996). The Court further recognizes that, "[i]f there are no explicit or implicit instructions to hold further proceedings, a district court has no authority to re-examine an issue settled by a higher court." *Bethea v. Levi Strauss and Co.*, 916 F.2d 453, 456 (8th Cir. 1990). In this case, however, the Eighth Circuit explicitly instructed the Court to hold further proceedings consistent with its opinion. And the Eighth Circuit has long held that, "'[a] mandate is completely controlling as to all matters within its compass but on remand the trial court is free to pass upon any issue which was not expressly or impliedly decided of on appeal.'" *R.C. Paull v. Archer-Daniels-Midland Co.*, 313 F.2d 612, 617 (8th Cir. 1963) (quoting *Thornton v. Carter*, 109 F.2d 316, 319-20 (8th Cir. 1940)).

The Court finds that the Defendants' statement that it was granted relief on all non-trust lands is contrary to the Eighth Circuit's opinion, quoted above, where the status of fee lands owned by individual Indians was questioned and the Eighth Circuit was not in a position to answer the question based upon the record as it exists. The Court finds that the status of fee lands is to be decided on this remand *to the extent that* the status of nonceded fee lands was not decided by the superior courts. It is clear from the Eighth Circuit's decision, that "those lands originally allotted to tribal members which have passed out of Indian hands," are not part of the Yankton Sioux Reservation. *Gaffey II*, 188 F.3d at 1030.

The Tribe advances two new arguments regarding the boundaries of the Yankton Sioux Reservation. The first is that the boundaries of the Yankton Sioux Reservation were frozen by the enactment of 25 U.S.C. § 398d, which the Tribe refers to as the 1927 Act. The second argument is that if the boundaries were not frozen by the 1927 Act, then the boundaries of the reservation were frozen by the Indian Reorganization Act of 1934, 25 U.S.C. §§ 2 and 4, and that all lands alienated to non-Indians after 1934 and prior to the Supervised Sales Act in 1948 must be considered within the boundaries of the Yankton Sioux Reservation. The Court will allow further briefing on these two arguments because the current boundaries of the Yankton Sioux Reservation are at issue and the effect of these two Acts on reservation boundaries was not before nor decided by the Eighth Circuit.

As recognized by the Eighth Circuit, "both sides have followed an all or nothing strategy" in this case, so neither side spent much time developing the record or arguments on specific tracts of land. *Gaffey II*, 188 F.3d at 1030. The two arguments regarding the 1927 Act and the 1934 Act should be resolved one way or the other so that people and governmental units have some additional resolution of reservation boundary and jurisdiction questions which have existed for over a century. It is necessary to resolve those two arguments that have not been previously made or addressed, so that there can be some finality to this litigation. If neither of those arguments are successful, then the reservation was and will continue to be diminished by each conveyance of land from an Indian to a non-Indian. This could well have an ongoing effect upon any currently determined reservation boundary. These arguments were neither raised nor considered in *Covey v. United States*, 109 F.Supp.2d 1135 (D.S.D. 2000). Neither the Yankton Sioux Tribe nor the State of South Dakota were parties to that 28 U.S.C. § 2255 action. It is recognized that the Court cannot and of course will not reconsider the reservation status of any lands clearly decided by the superior courts.

The Tribe also claims that the status of all rights-of-way existing on the Yankton Sioux Reservation as of 1927 are still part of the reservation and are Indian country under 18 U.S.C. § 1151. That claim is another result if the Tribe's 1927 Act argument discussed above is successful. Since that is the threshold question, the parties need not indicate the claimed or disputed rights of way in the map or maps the Court is requiring the parties to prepare. If the Tribe succeeds on the 1927 Act argument, then supplemental right of way maps can be subsequently prepared. Aside from rights of way that could be at issue if the Tribe succeeds on the 1927 Act argument, there may be other rights of way issues. Those other right of way issues are beyond the scope of the mandate and this litigation.

Another argument advanced by the Tribe is that the Court should decide the status of *subsurface* estates owned by individual Indians of originally allotted lands that are located under *surface* estates now owned by non-Indians. The record does not show whether there are any such separate subsurface estates in existence. Accordingly, the issue might be moot. If there are any separate subsurface estates, that issue can then be raised at another time in other litigation.

4

It is claimed by the Tribe that approximately 300 forced fee patents were illegally issued to Indian allottees under the 1906 Burke Act, 25 U.S.C. § 349, without application by or adequate consent by the Indian allottees. Thus, these claimed illegal transfers were void and any alienation of the allotments to non-Indians were nullities according to the Tribe. This claim was not previously raised before this Court and as a result was not considered by the superior courts. If and when that claim were to be considered, there would be threshold questions as to whether the claims were previously adjudicated or were time barred or otherwise barred as a group. If those threshold questions were resolved in favor of the Yankton Sioux Tribe or tribal members, then each individual claims would be subject to separate proof and analysis. It is possible that the outcome of that litigation could affect the boundaries of the Yankton Sioux Reservation. There is, however, a limit as to what should be undertaken in this litigation to determine reservation boundary issues that were not raised or addressed by this Court nor the superior courts. This issue as well as the subsurface estates issue, both now raised for the first time after this remand, are beyond the scope of this litigation even if not precluded or not addressed in the superior court opinions.

In addition to the above issues that the Court will consider, the Eighth Circuit remanded this action to allow the Court to make any necessary findings relative to the status of two categories of Indian lands that are held in trust: "land allotted to individual Indians that remains held in trust, and ... land taken into trust under the Indian Reorganization Act of 1934." *Gaffey II*, 188 F.3d at 1030. It appears from the parties' briefs and references in *Gaffey II*, 188 F.3d at 1018, that the parties agree the allotted lands remaining in trust are Indian country, but they disagree on whether these lands are Indian country under 18 U.S.C. § 1151(a) or § 1151(c). The Tribe contends these lands are Indian country under § 1151(a), because they remain part of the Yankton Sioux Reservation. The Defendants contend these lands are Indian country under § 1151(c), and are no longer within the boundaries of the Yankton Sioux Reservation. This issue must be decided on remand. In addition, the status of the land taken into trust under the Indian Reorganization Act of 1934 will be decided in the present proceedings. *See Gaffey II*, 188 F.3d at 1030.

5

The Yankton Sioux Tribe claims that the status of the land acquired by the U.S. Army Corps of Engineers for the Fort Randall Dam project is before the Court in this litigation. The Court previously entered an Order in the action involving the Fort Randall Dam lands, *Yankton Sioux Tribe v. United States Army Corps of Engineers*, CIV 02-4126 (D.S.D.), in which the Court stated that the status of the Yankton Sioux Reservation and its boundaries would be decided in the instant litigation. (CIV 02-4126, Order, Sept. 30, 2005). After further consideration, the Court finds that the status of the land acquired by the United States for the Fort Randall Dam project is not before the Court in this litigation.[1] Thus, the Court will enter an Order in CIV 02-4126 allowing the parties to address this issue in that action.

The United States' view is that the remaining issues can be decided on summary judgment based upon the facts and record developed to this point. The Court does not believe the facts and record developed to this point will be sufficient to decide the remaining issues discussed above. For example, the facts and record developed to this point do not designate what lands have been taken into trust pursuant to the Indian Reorganization Act of 1934 or what lands are held in fee by individual Indians. Moreover, the Eighth Circuit recognized that "[o]n the record before the court, ... we cannot define the precise limits of the reservation which remains." *Gaffey II*, 188 F.3d at 1030. The Eighth Circuit further stated that "[e]fforts at oral argument to get precise statements from the parties identifying what trust land remains were unsuccessful," which indicates that additional discovery may be necessary to clarify this issue.

In order to bring some more resolution and order to the jurisdictional questions, the Court has considered various approaches, including the appointment of a special master to determine the location and status of each piece of real property in question. The Court does not have funds

---

[1] The Court notes in *Yankton Sioux Tribe v. United States Corps of Engineers*, CIV 02-4126 (D.S.D.), the Yankton Sioux Tribe makes an allegation that the lands at issue in that action are trust lands. (Second Amended Complaint, Doc. 165 at ¶¶ 43-48.) Despite this allegation, it may well be necessary to have other parties joined to that litigation as necessary parties depending on the initial proof of that allegation.

6

available for such an undertaking. Instead this undertaking should be done by the parties with the Court then adjudicating any remaining disputes.

As recognized by the Eighth Circuit, additional evidence will need to be submitted to the Court to determine the existence and status of certain unceded fee and trust lands and to establish the boundaries of the Yankton Sioux Reservation. The Court will allow the parties an opportunity to conduct discovery on the issues the Court found above to be properly before the Court on remand. The Court anticipates it will be necessary for the parties to develop a new map showing the relevant categories of land. If the parties cannot agree on one map, then the parties may submit individual maps. As indicated above, the maps should not indicate subsurface estates nor Fort Randall Project lands nor rights of way. Following discovery and the filing of the map or maps, the Court will order briefing on any remaining issues and will schedule a court trial if necessary. Accordingly,

IT IS ORDERED:

1. That all discovery shall be commenced in time to be completed by March 5, 2007, and a maximum of thirty (30) interrogatories, including subparts, by each party to any other will be allowed, and responses thereto shall be due thirty (30) days after service and not later than March 5, so interrogatories will have to be served at least 30 days before March 5. Discovery responses must be supplemented as additional information is available.

2. That, on or before March 16, 2007, the parties shall file a joint map or maps if a joint map cannot be agreed upon.

2. That, on or before, March 23, 2007, the Defendants shall file briefs setting forth their views regarding the boundaries of the Yankton Sioux Reservation on the remaining issues as identified by the Court in this Memorandum Opinion; the Yankton Sioux Tribe and the United States shall file and serve answering materials and briefs on or before April 13, 2007; and Defendants' reply briefs shall be filed and served on or before April 24, 2007. The parties

need not restate arguments already made in response to the Court's previous Orders.

Dated this 13th day of December, 2006.

BY THE COURT:

/s/ Lawrence L. Piersol
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: /s/ Sharon Foury
(SEAL)        DEPUTY

8